UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT COURT OF FLORIDA

ILDALICIA SENCION,  
AND BUNTRICIA BASTIAN,

CASE NO.:

Plaintiffs,

v.



CIV-MIDDLEBROOKS

LADY BURD EXCLUSIVE COSMETICS, INC.,
ROBERTA BURD, ALAN BURD,
AND LARRY BURD,

Defendants.
_____/

# COMPLAINT

COME NOW, Plaintiffs, ILDALICIA SENCION ("SENCION"), and BUNTRICIA BASTIAN ("BASTIAN"), by and through counsel, sue Defendants, LADY BURD EXCLUSIVE COSMETICS, INC. ("LADY BURD"), ROBERTA BURD, ALAN BURD, and LARRY BURD, and allege as follows:

## PRELIMINARY STATEMENT

1. This action is brought by Plaintiffs, SENCION and BASTIAN, for discriminatory acts perpetuated by the defendants, LADY BURD, ROBERTA BURD, ALAN BURD, and LARRY BURD.

## JURISDICTION

2. This Court has subject-matter jurisdiction pursuant to 42 USC 2000e *et seq.* This Court also has jurisdiction based on diversity of citizenship, where the parties are citizens of different states, and where the amount in controversy exceeds $75,000.00.

## VENUE

3. Venue is proper in Palm Beach County, Florida, where the cause of action arose, and where the discriminatory acts took place.



1

## PARTIES

4. At all times relevant to this complaint, the plaintiffs were Florida residents living in Palm Beach County and Broward County, respectively. Headquartered in Farmingdale, New York, Lady Burd Exclusive Cosmetics, Inc. is a foreign, for profit corporation doing business in the State of Florida. The defendants, ROBERTA, ALAN, and LARRY BURD are all New York residents with substantial business contacts with the State of Florida.

5. At all times relevant to this complaint, the defendants, ALAN BURD and LARRY BURD were and are still vice-presidents of LADY BURD, while ROBERTA BURD was and still is Lady Burd'S principal officer. Thus, LADY BURD is vicariously liable for its agents' actions.

6. Plaintiffs, SENCION, and BASTIAN were employees of LADY BURD, working at the Boca Raton showroom. SENCION was hired as the manager of the Boca Raton showroom, whereas BASTIAN was employed as the Director of Education and Sales.

## STATEMENT OF FACTS

7. On or about August 25, 2003, ROBERTA BURD was the owner and hiring agent of LADY BURD Exclusive Cosmetics, Inc. ("LADY BURD"), and was involved in the business of selling cosmetics.

8. On or about August 25, 2003, ROBERTA BURD entered into an oral contract with ILDALICIA SENCION ("SENCION") whereby she promised to pay her an annual salary of $20,000.00 (and no commissions) while she was still residing in New York.

9. In mid-October of 2003, at ROBERTA BURD's bidding, SENCION moved to Florida and became the manager of the Boca Raton showroom at a salary of $28,000.00 a year, plus a four-percent commission on all of her sales. Of her gross pay of $600.00 a week, she used to take home $480.00. The Boca Raton showroom is located at 291 S.E. Mizner Blvd. # 45 in Boca Raton, Florida 33432.

10. Upon accepting employment with LADY BURD, SENCION had approximately twenty

2

(20) years in the sales of cosmetics. She had owned and operated her own beauty store in New York and in Italy, *inter alia*.

11. A few months later, LADY BURD hired Elisa Lipsky, a Caucasian woman, and paid her $35,000.00 a year as her starting salary, plus commissions. Ms. Lipsky had no experience in cosmetics sales and only worked at a beauty school prior to accepting employment with LADY BURD. Lipsky was later terminated.

12. Upon Lipsky's termination, on Monday, October 4, 2004, LADY BURD hired Buntricia BASTIAN ("BASTIAN") as Director of Education at $22,000.00 a year. BASTIAN was to teach make-up classes.

13. Before accepting employment with Lady Burd, Bastian used to own her own beauty school. She is an internationally known celebrity make-up artist whose clients are celebrities like Pastor June Robinson, Bobby Jones, etc. In fact, for several years, she has been the one in charge of the make up for the Bobby Jones' gospel shows held at the White House every year. In short, BASTIAN has over twenty years of experience in cosmetic education and sales.

14. On Thursday, October 7, 2004, while BASTIAN was cleaning Lipsky's old desk, she discovered two of Lipsky's pay stubs: one for her regular salary and another for her commissions. Both checks revealed that albeit inexperienced, Ms. Lipsky was earning substantially more than BASTIAN and SENCION.

15. BASTIAN showed SENCION both pay stubs prior to confronting ROBERTA BURD. First, BASTIAN showed BURD the salary pay stub. BURD explained that Lipsky's salary was higher than theirs because she did not receive any commissions. BASTIAN then pulled out the second pay stub, the commission one, and also showed it to ROBERTA BURD. At that point, a very surprised and disturbed BURD told BASTIAN: "Okay, okay. I am going to give you the same salary, but don't say anything to Ilda (SENCION) about it. Just shred the pay *stubs*." As a result, BASTIAN ended up receiving the same salary as Lipsky.

3

16. About a week later, SENCION asked ROBERTA BURD for a raise. BURD promised SENCION that she would get a raise in December. Comes December, BURD gave a $50.00 raise to SENCION who protested and was nastily told by BURD that was all she was going to get.

17. When SENCION later complained to Mary Ellen Cavallini, the Director of Sales, the latter insulted her and told her: "You're asking for too much money. Who do you think you are? Don't you ever ask Roberta for a raise again." On or around the same period of time, ROBERTA BURD also commented to BASTIAN: "Who told Ilda to buy a house in Boca? She should have just kept renting *like the rest of her kind* (Emphasis added)."

18. Later, BURD retained Carole Levine, a Caucasion woman of Jewish descent, at a $30,000.00 starting salary even though she did not have any cosmetic sales experience. Moreover, BURD also gave Levine an account that guaranteed her an additional $9,600.00 a year in commissions.

19. Apart from implementing a substantially different pay structure for her Caucasian and Black/Hispanic employees, LADY BURD also treated them disparately based on their race, ethnic origin, and/or religion. The following statements are some examples of the disparate treatment received by Black and Hispanic employees:

a. ROBERTA BURD paid her Caucasian and Jewish employees a substantially higher salary than her Black and/or Hispanic employees.

b. Roberta Burd consistently attempted to cheat Blacks and Hispanics out of their commission checks. Burd paid all Caucasian employees their salary and commission checks on time but withheld the checks of Blacks and Hispanics for weeks. In fact, Roberta Burd still owes commissions to both BASTIAN and SENCION.

c. Roberta Burd routinely deprived SENCION of her biggest accounts by referring *them to* Caucasian and/or Jewish representatives, and by telling them not to call Sencion because

she did not speak English. This way, Burd would often keep those accounts to herself, and thus, avoid paying commissions on the bigger accounts.

d. Roberta Burd did not pay Blacks and Hispanics for attending out-of-state trade shows. However, she paid the Caucasian and Jewish employees for attending the same shows as well as for staying at a hotel.

e. Roberta Burd refused to pay Blacks and Hispanics for attending training sessions and for working overtime, whereas she adequately compensated Caucasian and Jewish employees for the same. As an example, Burd still owes Sencion and Bastian money for overtime work.

f. Roberta Burd would often ask the Caucasian employees to watch their Black and Hispanic colleagues so that the latter would not steal any merchandise.

g. Roberta Burd would steal customers from the Black and Hispanic employees (i.e., especially the ones with the biggest accounts) by referring them to the Caucasian ones. For instance, when one of my biggest clients would call to place an order, Roberta Burd would tell her that she has someone who could better handle her needs than I.

h. Roberta Burd, along with her two sons, Alan and Larry Burd, emotionally abused her Black and Hispanic employees. Burd often proffered baseless accusations against her Black and Hispanic employees. For example, Burd called SENCION a "lazy ass spic" even though the latter was selling an average of $100,000.00 worth of merchandise a month. Further, Roberta Burd physically searched BASTIAN because Bastian was looking at her cell phone placed on her belt under her clothes.

i. Larry Burd made sexual innuendos to employees, especially the ones doted with generous breasts, such as BASTIAN.

j. Alan Burd verbally assaulted Sencion because a customer had questions about a particular order. Alan Burd requested that Sencion have the customer speak to him over

5

the phone, and got extremely infuriated when Sencion obliged. He insulted the customer, who then responded to him in a less than pleasant fashion.

k.  A furious Alan Burd then copiously berated Sencion for about ten minutes, calling her all sorts of names and profanities in the presence of customers and employees alike. Words like "motherfucker," "motherfucking Ilda," "fuck" and the like echoed across the showroom.

l.  Upon hanging up the phone, SENCION immediately began crying, shaking, and complained of a headache. She went directly to the hospital only to discover that she had suffered a stroke due to Alan Burd's brutal verbal assault. Thus, as a direct result of Lady Burd's hostile, abusive and discriminatory environment, Sencion suffered a stroke and developed high blood pressure.

m)  Roberta Burd required Hispanic and Black employees, but not Caucasian and Jewish, employees to clean the restrooms, sweep and mop the floors.

## CLAIMS FOR RELIEF

### COUNT I: BREACH OF ORAL CONTRACT

Plaintiff re-alleges all of the foregoing paragraphs and further states that:

20.  Upon hiring SENCION as the manager of the Boca Raton showroom, ROBERTA BURD promised to pay SENCION a $28,000.00 salary plus a four-percent commission on all of her sales. However, during SENCION's employment with LADY BURD, ROBERTA BURD attempted to withhold and/or modify the percentage of SENCION's commissions. In fact, although SENCION performed all conditions precedent to obtaining her commissions, BURD completely failed to pay SENCION her commissions for the months of June, July, and August of 2005, as well as her first week of salary. As a result, SENCION ceased her employment with LADY BURD on or about xxx 2005.

21.  Upon retaining BASTIAN as Director of Education, BURD promised to pay BASTIAN $22,000.00 a year, plus commissions. However, although BASTIAN fulfilled all conditions

6

precedent to obtaining her commissions. BURD failed to pay said commissions.

WHEREFORE, Plaintiffs hereby request that this Court finds that Defendants breached the oral contract and awards them their due commissions, compensatory damages, attorney's fees and costs under sections 448.08 and 57.041, Florida Statutes, *inter alia*, pre-judgment and post-judgment interest.

## COUNT II: EMPLOYMENT DISCRIMINATION BASED ON RACE AND ETHNIC ORIGIN AND RELIGION

Plaintiffs re-allege all of the foregoing paragraphs and further state that:

22. Both Title VII and the Florida Civil Rights Act make it unlawful for an employer to discriminate against an employee on the basis of age, sex, race, ethnic origin, and/or religion, *inter alia*. *See* Title VII and section 760.01 et seq, Florida Statutes (2004).

23. ROBERTA BURD discriminated against her Black and Hispanic employees in many ways. First, BURD paid her Caucasian and/or Jewish employees a substantially higher income for comparable work. Second, BURD paid those higher salaries to Caucasian employees with little to no experience and less seniority than their Black and Hispanic counterparts. Third, BURD required Blacks and Hispanics to clean bathrooms, sweep and mop the floors but not her Caucasian employees. BURD refused to pay Blacks and Hispanics for training and hotels when they had to attend tradeshows but paid Caucasian employees. Nor did BURD compensate Blacks and Hispanics for working overtime, per diem, and/or weekends. Fourth, BURD sometimes withheld commission checks from the Blacks and Hispanics while adequately compensating the other employees. Lastly, she often referred to them using racial slurs, such as "lazy-ass spic" or "fucking Black bitch."

24. ROBERTA BURD often called SENCION, a Christian, a "Bible-toting, lazy ass spic," who does nothing in the office but read her Bible. Yet, SENCION was selling thousands of dollars worth of merchandise on a monthly basis.

7

25. This pattern or practice of purposeful and routine discrimination against Black and Hispanic employees occurred in violation of Federal and State laws, created a hostile and abusive work environment, and is actionable against the defendants.

WHEREFORE, Plaintiffs respectfully urge this Court to find that the defendants are liable for employment discrimination, and awards them compensatory damages, including but not limited to back pay, and punitive damages pursuant to the Florida Civil Rights Act, and Title VII, and any other relief that this Court may find just and proper under the circumstances.

## COUNT III: WAGE DISCRIMINATION (EPA)

Plaintiffs re-allege all of the foregoing paragraphs and further state that:

26. Pursuant to Title VII and the Florida Civil Rights Act, an employer is liable for wage discrimination if he/she provides disparate compensations to an employee based on the latter's sex, race, and/or ethnic origin, *inter alia*. *See* Title VII and section 760.10, Florida Statutes.

27. Here, ROBERTA BURD, the president of LADY BURD, makes it a company policy to provide a substantially higher salary to her Caucasian and/or Jewish employees than to her Black and/or Hispanic employees. Even though both SENCION and BASTIAN had substantially more cosmetic sales experience than Lipsky and Levine, ROBERTA BURD hired SENCION and BASTIAN at $20,000.00 to $22,000.00 a year whereas she paid Lipsky and Levine over $35,000.00 a year, notwithstanding commissions. But for being of different races, all sales representatives were similarly situated and performed the same type of work.

WHEREFORE, Plaintiffs respectfully urge this Court to find that the defendants are liable for wage discrimination, and awards them compensatory damages, including but not limited to back pay, and punitive damages pursuant to the Florida Civil Rights Act, the EPA, and Title VII, and any other relief that this Court may find just and proper under the circumstances.

## COUNT IV: SLANDER *PER SE*

Plaintiffs re-allege all of the foregoing paragraphs and further state that:

28.     "Slander may be defined as the speaking of base and defamatory words which tend to prejudice another in his reputation, office, trade, business, or means of livelihood." *Spears v. Albertson's, Inc.*, 848 So.2d 1176, 1179 (Fla. 1st DCA 2003)(*quoting Axelrod v. Califano*, 357 So. 2d 1048, 1050 (Fla. 1st DCA 1978)). "When the words published concerning a person tend to degrade him, bring him into ill repute, destroy confidence in his integrity, or cause other like injury, such language is actionable per se." *Id.*

29.     On several occasions, ROBERTA BURD falsely accused SENCION and BASTIAN of stealing. BURD specifically told a Caucasian employee that she was hired to keep an eye on SENCION and BASTIAN because she suspected that they were stealing from her. In one particular instance, ROBERTA BURD publicly searched BASTIAN because she had seen BASTIAN looking at her belt on a few occasions. She, BURD, *thought* that BASTIAN was hiding stolen cosmetics under her belt when the latter was simply checking her cellular phone.

30.     BURD also publicly referred to SENCION and BASTIAN using derogatory terms and profanities, which tended to injure SENCION and BASTIAN in their reputation and livelihood.

        WHEREFORE, Plaintiffs hereby request that this Court finds that Defendants are liable for slander *per se*, and awards them compensatory damages, punitive damages, and attorney's fees and costs.

## COUNT V: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

        Plaintiff, SENCION, re-alleges all of the foregoing paragraphs and further states that:

31.     To successfully plead intentional infliction of emotional distress, a plaintiff must show that the defendant's conduct was intentional or reckless; the conduct was outrageous; the conduct caused emotional distress, and the emotional distress was severe. *See Clemente v. Horne*, 707 So.2d 865, 866 (Fla. 3d DCA 1998)(*quoting Dominguez v. Equitable Life Assurance Soc'y of U.S.*, 438 So. 2d 58, 59 (Fla. 3d DCA 1983)).

32.     Plaintiff, SENCION, had to endure the BURDS' continuous attacks and insults. She was thus forced to work in an abusive workplace. ROBERTA BURD publicly referred to her as a

9

"pussy," "Bible-toting," "lazy-ass Spic" who is trying to convert everybody, "fucking Christian."

33. When SENCION confronted BURD about the commission checks, inter alia, BURD often screamed profanities at SENCION before hanging up the phone. For example, she would bellow words like "Fuck you, Bitch" to SENCION before slamming down the phone.

34. When SENCION complained to Cavallini about the hostile working environment and more specifically about Burd's actions, Cavallini would invariably remarked to her that she, SENCION, was being too sensitive, did not speak and understand English, was a church lady, was too good to Roberta, needed to stand up for herself and scream at Roberta. Unfortunately enough, this was always the extent of Cavallini's responses to SENCION's tearful complaints.

35. On one particular dreadful occasion, a furious ALAN BURD copiously insulted SENCION for about ten minutes over a customer inquiry, calling her all sorts of names and profanities in the presence of customers and employees alike.

36. A profoundly shaken SENCION suffered a stroke and ended up at the hospital. During the course of her employment with LADY BURD, SENCION suffered two strokes, had to be hospitalized on several occasions due to stress-related issues, including constant headaches, bouts of tears, and anxiety feelings. She also developed high blood pressure, and a tangible decrease in her quality of life as a result of the onset of high blood pressure, a chronic illness.

WHEREFORE, Plaintiff, SENCION, respectfully prays this Court finds that SENCION experienced severe emotional distress while at LADY BURD's employ, and awards her compensatory damages for pain and suffering, future medicals, and punitive damages.

COUNT V: SEXUAL HARASSMENT

Plaintiff, BASTIAN, re-alleges all of the foregoing paragraphs and further states that:

37. To successfully plead a claim of sexual harassment, a plaintiff must show that: "1) he or she belongs to a protected group; 2) that the employee was subjected to unwelcome *sexual harassment*; 3) that the harassment was based on the sex of the employee; 4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a

10

discriminatorily abusive working environment; and 5) a basis for holding the employer liable exists." *Speedway Superamerica, L.L.C. v. Dupont*, 30 Fla. L. Weekly D. 1641 (Fla. 5th DCA, July 1, 2005).

38. BASTIAN, a Black woman, worked at several trade shows with LARRY BURD. In February 2005, she attended a show with LARRY BURD in Long Beach, California. The same month, they also went to Chicago. In March, they attended a third show in Philadelphia. In April, they held a fourth show in Las Vegas, and finally, in May, they were on a fifth show in New York. Also, LARRY BURD came to the Boca Raton showroom on several occasions.

39. On each and every one of the occasions in which BASTIAN worked with LARRY BURD, he made unwelcome, sexually charged comments about loving to work with "girls with big boobs." BASTIAN happens to be one doted with such generous features, and as such, was often a victim of LARRY BURD's unwelcome sexual advances.

40. BASTIAN complained to Cavallini, the Director of Sales and her immediate supervisor, about LARRY BURD's constant remarks about her breasts. However, Ms. Cavallini told her that this was simply the way LARRY BURD always behaved, that everyone around the office knew about it, that she does not get involved anymore, and that it would be useless to mention it to ROBERTA BURD because she did not want to hear any derogatory comments about her sons.

41. As one of LADY BURD's principal officers, LARRY BURD, through his impermissible comments, created an abusive and hostile environment in which BASTIAN was forced to work, and thus, should be held liable for sexual harassment.

WHEREFORE, Plaintiff, BASTIAN, respectfully prays for compensatory and punitive damages pursuant to section 448.101, Florida Statutes, the Florida Civil Rights Act, and Title VII, and any other relief that this Court may find just and proper under the circumstances.

### COUNT VI: RETALIATORY DISCHARGE

Plaintiff, BASTIAN, re-alleges all of the foregoing paragraphs and further states that:

11

42. Pursuant to section 448.102, Florida Statutes, the Florida Whistleblower Act, "[a]n employer may not take any retaliatory personnel action against an employee because the employee has [...] (3) objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." *Rivera v. Torfino Enters.*, 914 So.2d 1087, 1089 (Fla. 4th DCA 2005).

43. Further, both Title VII and section 760.01(7), Florida Statutes, the Florida Civil Rights Act, also make it unlawful for an employer to terminate an employee because the latter complained of an unlawful employment practice. *See* Title VII and section 760.01(7), Fla. Stat (2004).

44. Here, on several occasions, BASTIAN complained to Burd about the disparate treatment of similarly-situated account representatives. The very first week of her employment, she confronted Burd about the discrepancies in salaries upon discovering Lipsky's forgotten pay stubs. *See* supra.

45. She also complained to Cavallini, the Director of Sales, when commission checks were issued to all representatives but to Blacks and Hispanics. She specifically told Cavallini that she felt it was a "racist act." When ROBERTA BURD confronted her about her statements, BASTIAN shared the same concerns with ROBERTA BURD who immediately fired her with the following words: "Get out of my office, you Black bitch." Thus, ROBERTA BURD wrongfully terminated BASTIAN in violation of the Whistleblower Act, the Florida Civil Rights Act, and Title VII.

WHEREFORE, pursuant to section 448.101, Florida Statutes, the Florida Civil Rights Act, and Title VII, Plaintiff, BASTIAN, respectfully prays for compensatory and punitive damages, and any other relief that this Court may find just and proper under the circumstances.

### DEMAND FOR JURY TRIAL

Plaintiffs request a jury trial on all triable issues.

Respectfully submitted,

*[signature]*

Marie G. Vital, Esq.
Florida Bar No. 0670502
Attorney for Plaintiffs
The Whittaker Building
1065 N.E. 125th St.
Suite 317
Miami, FL 33161
(305) 893-2554 (Phone)
(305) 893-2556 (Fax)

JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

## I. (a) PLAINTIFFS
Idalicia SENCION
Buntricia BASTIAN

(b) County of Residence of First Listed Plaintiff: Palm Beach
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)
Marie G. Vital, Esq.
The Whittaker Bldg. Palm Beach (?) 80772
1065 NE 125th St #317 Middlebrook / Jo Hess
Miami, FL 33161   (305) 893-8554

## DEFENDANTS
[illegible stamp] BROOKS

County of Residence of First Listed Defendant: ____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

Attorneys (If Known)
Evan Screen

MAGISTRATE JOHNSON

(d) Check County Where Action Arose: ☐ MIAMI-DADE ☐ MONROE ☐ BROWARD ☑ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☑ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☑ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY / PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment |  |  | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / PERSONAL PROPERTY | ☐ 650 Airline Regs. | ☐ 840 Trademark | ☐ 480 Consumer Credit |
|  | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health |  | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits |  | ☐ 690 Other | SOCIAL SECURITY | ☐ 810 Selective Service |
|  | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | LABOR | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☑ 190 Other Contract | ☑ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise |  |  | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| REAL PROPERTY | CIVIL RIGHTS / PRISONER PETITIONS | ☐ 740 Railway Labor Act | FEDERAL TAX SUITS | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☑ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act |  | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / Habeas Corpus: |  | ☐ 871 IRS—Third Party 26 USC 7609 |  |
| ☐ 240 Torts to Land |  / ☐ 530 General |  |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty |  |  |  |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other |  |  | ☐ 950 Constitutionality of State Statutes |
|  |  / ☐ 550 Civil Rights |  |  |  |
|  | ☐ 446 Amer. w/Disabilities - Other / ☐ 555 Prison Condition |  |  |  |
|  | ☐ 440 Other Civil Rights |  |  |  |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):
a) Re-filed Case ☐ YES ☐ NO    b) Related Cases ☐ YES ☐ NO
JUDGE ____    DOCKET NUMBER ____

## VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):
42 USC 2000e - Employment discrimination

LENGTH OF TRIAL via 5 days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ over $75,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE
SIGNATURE OF ATTORNEY OF RECORD: [signature] Marie G. Vital
DATE: 8/11/06

FOR OFFICE USE ONLY
AMOUNT $350 ck   RECEIPT # 945092
8/11/06